IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIRK ANTHONY BELL,

    Plaintiff,

    v.

NORTH BRANCH CORRECTIONAL
INSTITUTION, *et al*.,

    Defendants.

Civil Action No.:  JRR-22-2772

**MEMORANDUM**

Mr. Bell has moved this Court to proceed in forma pauperis.  ECF No. 2, 7.  Upon review of the motions, and because Mr. Bell appears to be indigent, his motions will be granted. The verified inmate account statement (ECF No. 15), filed pursuant to this Court's Order by the finance officer at North Branch Correctional Institution ("NBCI"), reflects a six-month average account balance of $125.16 and average monthly deposits of $0.00.  Mr. Bell paid the initial partial filing fee of $25.03 on January 10, 2023.

Mr. Bell was directed to file an amended complaint (ECF No. 5), which he did on November 21, 2022.  ECF No. 6.  This serves as the operative pleading in this matter.  *See* ECF No. 5 at 3 (advising Mr. Bell that "[a]n amended complaint will replace the original complaint filed.").  However, on March 1, 2023, Mr. Bell filed another "amended complaint."  ECF No. 25. Because Mr. Bell indicates that "the original complaint is incorporated herein by reference," (*Id.* at 1) the Court will construe this filing as a supplement to Mr. Bell's original amended complaint.[1] The Court will screen both the Amended Complaint and the Supplement for sufficiency pursuant to 28 U.S.C. § 1915A.

---

[1] The Clerk will be directed to update the docket to reflect this construction.

Additionally, on November 21, 2022, Mr. Bell filed a Motion and Affidavit to Cease and Desist Excessive Unjust Punishment (ECF No. 8), which was construed as a motion for injunctive relief.  Given the serious nature of Mr. Bell's allegations regarding his mental and physical health, the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Mr. Bell's custodian, was directed to show cause as to why injunctive relief should not be granted in Mr. Bell's favor.  ECF No. 10.  DPSCS filed their response (ECF No. 14), and Mr. Bell replied.  ECF No. 24.  The motion has been fully briefed, and as such, it is now ripe for disposition.  See Local Rule 105.6 (D. Md. 2021).

I.   Background

A.  Amended Complaint (ECF No. 6)

Mr. Bell's Amended Complaint alleges that he was "beat up by" Western Correctional Institution ("WCI") staff shortly before his transfer to North Branch Correctional Institution ("NBCI").  He names nine individual defendants employed at NBCI: Correctional Officer II ("COII") R. Dolly, COII L. Conrad, COII M. Eagleson, COII J. Short, shift supervisor William Gillum, Warden Jeff Nines, Robert Fritz, George Mealpine, and NBCI.  ECF No. 6 at 1.  He states that, upon transfer to NBCI, he warned defendant Gillum as well as mental health staff that "the leader of the Blood gang, Robert Crosby, put a $15,000 Hit on me."  *Id.* at 2-3.  He states that "drugs and cell phones were knocked off" and staff at WCI "told the gangs it was [his] fault and that [he is] a snitch."  *Id.* at 3.  Mr. Bell alleges further that he received threats while housed at WCI, and those threats continued after his transfer to NBCI.  *Id.*

Mr. Belle contends that Defendants Eagleson, Conrad, Dolly, and Short "all attempted to put me in danger by moving me to general population to be harmed by inmates" and that Defendants Gillum, Fritz, and Mealpine "all signed off allowing [me] to be excessively punished

2

just for wanting safety." *Id.*  Defendant Nines "allows the staff to excessively punish [him] over and over for merely wanting to be free from harm." *Id.*  He concludes that "the institution is indirectly working with the inmates who want to harm me by trying to force me into general population to be harmed by them or carrying out sanctions of punishing me with lock up." *Id.*

        B.  Motion for Injunctive Relief (ECF No. 8)

In his Motion to Cease and Desist Excessive Unjust Punishment (ECF No. 8), construed as a motion for injunctive relief, Mr. Bell states that there are threats on his life, and he will be put in danger if he is housed in  general  population at NBCI.  *Id.*  He states that the threats arose at WCI and followed him when he was transferred to NBCI.  *Id.*  He asserts that he is faced with a lose-lose choice by prison staff: either return to general population where he believes his safety is in jeopardy or be "punished with lock up" for refusing to return to general population.  *Id.* at 1-2. Mr. Bell asserted in his Motion that his mental health was deteriorating because of this situation; he was having suicidal thoughts, had attempted to kill himself, and, at the time this motion was written, he had not eaten since October 27, 2022.[2] *Id.* at 2.  As injunctive relief, he seeks permanent housing in either protective custody or administrative segregation.  *Id.*  Because Mr. Bell's Motion raised very serious concerns which potentially impacted upon his safety and well-being, DPSCS was directed to show cause as to why injunctive relief should not be granted in Mr. Bell's favor. ECF No. 10.

        C.  DPSCS Response (ECF No. 14)

DPSCS responded on December 22, 2022.  ECF No. 14.  DPSCS indicates that Mr. Bell was confined at WCI from September 25, 2012, until May 3, 2022, when he was transferred to NBCI.  ECF No. 14 at 2.  On October 21, 2021, while housed at WCI, Mr. Bell was put on

---

[2] Mr. Bell's Motion is dated November 16, 2022.  ECF No. 8 at 2.

administrative segregation in order to investigate his safety concerns.  *Id.*  Then, on July 19, 2022,

at NBCI, Mr. Bell was again put on administrative segregation for five days so that the facility

could investigate his safety concerns.  *Id*. at 3.  Mr. Bell remained on administrative segregation,

with reviews on August 17 and September 13, 2022.  Decl. of John White; ECF No. 14-1 at 2.  On

October 12, 2022, it was recommended by the Case Management Team that Mr. Bell leave

administrative segregation for "job bank sanitation."  *Id.* at 2-3.

On May 14, May 28, June 15, and October 27, 2022, Mr. Bell was given a direct order to

leave segregation, and each time he refused to comply with the order.  ECF No. 14 at 3; *see also*

Exhibits ECF Nos. 14-1, 14-5-14-10.  Accordingly, he was assigned to disciplinary segregation.

*Id.*  DPSCS asserts that Mr. Bell's fears for his safety have been investigated by DPSCS and that

"NBCI's investigation did not find any evidence to support that Plaintiff's life was in jeopardy."

ECF No. 14 at 3.[3]  Accordingly, DPSCS argues that Mr. Bell has not satisfied the requirements

necessary to obtain the extraordinary remedy of injunctive relief.  ECF No. 14.

D.  Mr. Bell's Reply (ECF No. 24)

Mr. Bell replied to DPSCS on February 10, 2023.  ECF No. 24.  Mr. Bell states that he has

not deliberately failed to comply with orders to return to the general population.  ECF No. 24 at 4.

Instead, he states that "every time a staff member came to my cell to put me in danger of being

harmed in general population, I explained the situation of being under duress and stated I was in

fear for my safety."  *Id.*  Rather than offering alternative housing options in response to his

concerns, Mr. Bell "was then simply given an infraction and sanctioned" with disciplinary

---

[3] The Court notes that, while DPSCS states in its response that Mr. Bell's fears were not substantiated (ECF No. 14 at 3), they do not provide any documentation to that effect.  The citation provided, to ¶ 8 of the Affidavit of Correctional Case Management Specialist II John White (ECF No. 14-1), does not support DPSCS's assertion. Instead, it simply states that Mr. Bell was recommended to be removed from administrative segregation without explanation as to why.  No investigation reports or summaries are provided to explain how Mr. Bell's concerns were investigated, who conducted the investigation, or what the investigation revealed.

segregation.  *Id.*  Mr. Bell also takes issue with the quality of WCI and NBCI's investigations of his concerns.  *Id.* at 4-5.  He believes the investigations "lack any substance" and are compromised by the involvement of Lt. Beeman.  *Id.*  He further states that WCI provided inaccurate information to NBCI when he was transferred, further compromising the integrity of the investigation.  *Id.* He asserts that "this is not about giving [an] individual authority to choose his own classification…this is about and only about [his] safety and emotional, mental health, and physical well being."  *Id* at 19.  As injunctive relief, he seeks "any form of protection…whether it be ICC transfer, protective custody, or administrative segregation."  *Id.*

       E.   Supplement to the Amended Complaint (ECF No. 25)

In Mr. Bell's supplement to the amended complaint, he seeks to add additional defendants and claims.  First, he adds WCI employees Lt. Smith, COII Welsh, and COII John Doe.  ECF No. 25 at 1-2.  He states that these officers were "involved with the incident that gave rise to [his] complaint" because they assaulted him on May 3, 2022, at WCI prior to his transfer to NBCI.  He states that these defendants "beat [him] in the head, temple, face, balls, and choked [him] out."  *Id.* He also names Lt. Steve Beeman as a defendant.  *Id.* at 2.   He asserts that Beeman told inmates that he was a snitch and "used BGF gang members" to threaten him.  *Id.*  He also asserts that Beeman directed Smith, Welsh, and Doe to assault him.  *Id.*  He adds NBCI hearing officer Christopher Wedlock as a defendant, alleging that Wedlock "issue[d] sanctions unjustly…"  *Id.* at 3.  Finally, he adds NBCI officer R. Adkins.  *Id.*  Mr. Bell told Adkins "of the hit on him by blood gang member Robert Crosby" when Adkins attempted to move him to general population.  *Id.* When Mr. Bell would not comply with the order to leave his cell, Adkins gave him an "infraction for disobey an order."  *Id.*

He reiterates in his supplement that he has "a hit on [him] by Blood gang member Robert Crosby," and accordingly, is in danger in the general population environment. *Id.* at 4. He argues that his placement "is, in practice, indefinite lock up" because NBCI gives him "a fabricated infraction over and over and sanction[s him] with lock up for coming forward and seeking safety." *Id.*

II.    Failure to State a Claim

The Court has reviewed Mr. Bell's Amended Complaint and Supplement for sufficiency. Recognizing that Mr. Bell proceeds pro se, this Court affords his pleadings a liberal construction. *See White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). However, Mr. Bell has failed to state a claim against certain named defendants, as outlined below, and they will be dismissed from this action.

   A.  NBCI

Mr. Bell names NBCI as a defendant. A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken

by a person, and NBCI is not a person within the meaning of the statute.  Thus, defendant NBCI

will be dismissed from this action.

        B.  Christopher Wedlock

Mr. Bell alleges that disciplinary hearing officer Christopher Wedlock issued "sanctions

unjustly to abuse and torture" him.  ECF No. 25.  No additional facts are provided regarding these

hearings, Wedlock's decisions, or the sanctions given.

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings

are not part of a criminal prosecution and the full array of rights due a defendant in such

proceedings does not apply.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey*

*v. Brewer*, 408 U.S. 471, 488 (1972)).  In prison disciplinary proceedings where an inmate faces

the possible loss of diminution credits, he is entitled to certain due process protections. These

include: (1) advance written notice of the charges against him; (2) a written statement of the

evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is

afforded the right to call witnesses and present evidence when doing so is not inconsistent with

institutional safety and correctional concerns, and a written decision; (4) the opportunity to have

non-attorney representation when the inmate is illiterate or the disciplinary hearing involves

complex issues; and (5) an impartial decision-maker.  *See Wolff*, 418 U.S. at 564-66, 592.  There

is no constitutional right to confront and cross-examine witnesses or to retain and be appointed

counsel.  *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501,

504-05 (4th Cir. 2004).  As long as the hearing officer's decision contains a written statement of

the evidence relied upon, due process is satisfied.  *See Baxter*, 425 U.S. at 322, n.5.  Moreover,

substantive due process is satisfied if the disciplinary hearing decision was based upon "some

evidence."  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*,

945 F.3d 159, 171 (4th Cir. 2019) ("the 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet."),

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d at 171-72. As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Mr. Bell's bald allegation that the sanctions were unjust and intended to abuse him fails to state a claim for violation of his due process rights, and as such, Wedlock will be dismissed from this action.

III. Motion for Injunctive Relief

As injunctive relief, Mr. Bell seeks permanent housing in either protective custody or administrative segregation. ECF No. 8 at 2.

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). "All four requirements must be satisfied." *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (brackets omitted); *see also Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013)

(noting that Fourth Circuit's prior test of balancing the factors is no longer good law in light of *Winter*).

As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). When a prisoner seeks injunctive relief that would affect the management of a correctional institution, the Court should grant the request only under extraordinary and compelling circumstances, "so as not to assume the role of prison administrators." *See Taylor v. Freeman*, 34 F.3d 266, 269–70 & n.2 (4th Cir. 1994).

Because Mr. Bell's Complaint remains pending, the Court declines to address Mr. Bell's likelihood of success on the merits at this point. However, injunctive relief must be denied because Mr. Bell has not satisfied all four of the required *Winters* factors. First, Mr. Bell has failed to demonstrate a likelihood of suffering irreparable harm if the relief is not granted. To succeed in securing injunctive relief, Mr. Bell must show the harm he complains of to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Grp.,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Mr. Bell puts forth no facts to suggest that the threats he believes he faces are imminent. On the contrary, DPSCS has twice placed Mr. Bell on administrative segregation to investigate his concerns. Mr. Bell's assertions that DPSCS's investigations are compromised or not sufficiently thorough are insufficient to raise his concerns for safety above the speculative level. Accordingly, Mr. Bell has not demonstrated the actual,

imminent likelihood of harm needed to warrant the extraordinary remedy of injunctive relief. Further, Mr. Bell has failed to demonstrate that the balance of equities is in his favor or that an injunction would be in the public interest.  Because the criteria for obtaining injunctive relief have not been met, this Court will deny Mr. Bell's Motion to Cease and Desist Excessive Unjust Punishment.  ECF No. 8.

IV.     Claims That May Proceed

The Court construes Mr. Bell's claims that may proceed as follows: (1)  DPSCS and the named Defendants have failed to protect him, and relatedly, (2) repeated assignments to disciplinary segregation constitute deliberate indifference to an excessive risk to Mr. Bell's physical and mental health arising from conditions akin to solitary confinement, amounting to constitutionally inadequate conditions of confinement in violation of the Eighth Amendment; and (3) that WCI officers used excessive force against him when they assaulted him on May 3, 2022. Defendants will be directed to clearly address each of these claims.

V.     Conclusion

For the foregoing reasons, Mr. Bell has failed to demonstrate his entitlement to injunctive relief in this matter, so his motion is denied.  Defendants Christopher Wedlock and NBCI will be dismissed from this action.  The case will proceed to service, and Defendants are directed to clearly address Mr. Bell's claims as identified above in their response.  A separate order follows.

Dated: March _23_, 2023

_____/S/_____
Julie R. Rubin
United States District Judge