## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KIRK ANTHONY BELL,

     Plaintiff,

     v.

                                   Civil Action No. JRR-22-2772

CO II R. DOLLY, *et al.*,

     Defendants.

## MEMORANDUM OPINION

*Pro se* Plaintiff Kirk Anthony Bell, presently incarcerated at North Branch Correctional Institution ("NBCI"), filed the instant Amended Complaint and supplement thereto pursuant to 42 U.S.C. § 1983. (ECF Nos. 6, 25; "the Amended Complaint.")[1]  Plaintiff names as Defendants 13 correctional officers and Maryland Department of Public Safety and Correctional Services ("DPSCS").

This matter comes before the court on Defendants' Motion to Dismiss or, In the Alternative, Motion for Summary Judgment (ECF No. 39; the "Motion"),[2] Plaintiff's verified opposition to same at ECF No. 49,[3] and Plaintiff's Motion to Charge Robert Fritz Under the

---

[1] Plaintiff filed his original pleading at ECF No. 1, which Plaintiff amended and thereafter supplemented (ECF Nos. 6, 25) in accordance with the court's order at ECF No. 5.  As set forth in the order at ECF No. 26, the Amended Complaint, together with the supplement, serve as the operative pleading in this matter and are, together, referred to herein as the "Amended Complaint" except where necessary for clarity.

[2] Defendants include Ronnie Dolly, CO II L. Conrad, Randy Adkins, Steven Beeman, Justin Short, Matthew Eagleson, John Doe, Robert Fritz, William Gillum, George McAlpine, Jeff Nines, James Smith, and Colin Welsh.  By accompanying order, the Clerk of Court is directed to update the docket to reflect the correct spelling of Defendants' names.  The court notes that the Office of the Attorney General of Maryland accepted service on behalf of all Defendants (ECF Nos. 28, 33.)  The Motion, however, fails to list Defendant CO II L. Conrad as a Defendant on whose behalf the Motion is filed and identifies Defendant William Gillum as "William" – omitting his surname  (ECF No. 39 at 2, ECF No. 39-1 at 1.)  The court construes these irregularities as mere clerical errors and construes the Motion to be brought on behalf of all Defendants.

[3] Plaintiff's opposition is titled "Response to Dismiss."  Below the title, the opposition reads, *inter alia*, "Motion to Strike, immaterial, impertinent and scandalous matter."  Based on the content of the filing, the court construes Plaintiff Bell to ask the court to strike portions of the Motion and affidavits attached thereto that Plaintiff contends are "submitted in bad faith."  The court, construing Plaintiff's filing to include a Rule 12(f) Motion to Strike, denies the

Penalties of Perjury at ECF No. 50.  The court has reviewed the pleadings and finds a hearing unnecessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons set forth herein, by separate accompanying order, the Motion, construed as one for summary judgment, is granted for failure to exhaust administrative remedies; and Plaintiff's motion at ECF No. 50 is denied.

## I.   BACKGROUND

The court summarized Plaintiff Bell's allegations in its memorandum opinion issued March 23, 2023, and reiterates them here for efficiency and clarity:

> Plaintiff Bell's Amended Complaint alleges that [on May 5, 2022] he was 'beat up by' Western Correctional Institution ("WCI") staff shortly before his transfer to North Branch Correctional Institution ("NBCI").  He names nine individual defendants employed at NBCI: Correctional Officer II ("COII") R. Dolly, COII L. Conrad, COII M. Eagleson, COII J. Short, shift supervisor William Gillum, Warden Jeff Nines, Robert Fritz, George Mealpine, and NBCI. ECF No. 6 at 1.  He states that, upon transfer to NBCI, he warned defendant Gillum as well as mental health staff that 'the leader of the Blood gang, Robert Crosby, put a $15,000 Hit on me.'  *Id.* at 2-3.  He states that 'drugs and cell phones were knocked off' and staff at WCI 'told the gangs it was [his] fault and that [he is] a snitch.'  *Id.* at 3.  Plaintiff Bell alleges further that he received threats while housed at WCI, and those threats continued after his transfer to NBCI. *Id.*
>
> Plaintiff Bell[] contends that Defendants Eagleson, Conrad, Dolly, and Short 'all attempted to put me in danger by moving me to general population to be harmed by inmates' and that Defendants Gillum, Fritz, and Mealpine 'all signed off allowing [me] to be excessively punished just for wanting safety.'  *Id.* Defendant Nines 'allows the staff to excessively punish [him] over and over for merely wanting to be free from harm.'  *Id.*  He concludes that 'the institution is indirectly working with the inmates who want to harm me by trying to force me into general population to be harmed by them or carrying out sanctions of punishing me with lock up.'  *Id.*
>
>                         *     *     *
>
> In Plaintiff Bell's supplement to the amended complaint, he seeks to add additional defendants and claims. First, he adds WCI employees Lt. Smith, COII Welsh, and COII John Doe.  ECF No. 25 at 1-2.  He states that these officers were 'involved with the incident that gave rise to [his] complaint' because they

---

request.  That a party disagrees with, even vehemently, the content of a court paper or supportive exhibit filed by another party does not present adequate basis to strike, which effectively removes the offending item from the court's consideration, or provide similar relief.  Plaintiff Bell hotly contests the Motion and supportive exhibits, but fails to articulate any basis for the court to strike, or afford similar relief regarding, any defense filing or submission. Therefore, the motion to strike contained within Plaintiff's opposition to the Motion is denied.

assaulted him on May 3, 2022, at WCI prior to his transfer to NBCI.  He states that these defendants 'beat [him] in the head, temple, face, balls, and choked [him] out.'  *Id.*  He also names Lt. Steve Beeman as a defendant.  *Id.* at 2.  He asserts that Beeman told inmates that he was a snitch and 'used BGF gang members' to threaten him.  *Id.*  He also asserts that Beeman directed Smith, Welsh, and Doe to assault him.  *Id.*  He adds NBCI hearing officer Christopher Wedlock as a defendant, alleging that Wedlock "issue[d] sanctions unjustly…"  *Id.* at 3.  Finally, he adds NBCI officer R. Adkins.  *Id.*  Plaintiff Bell told Adkins 'of the hit on him by blood gang member Robert Crosby' when Adkins attempted to move him to general population.  *Id.*  When Plaintiff Bell would not comply with the order to leave his cell, Adkins gave him an 'infraction for disobey an order.'  *Id.*  He reiterates in his supplement that he has 'a hit on [him] by Blood gang member Robert Crosby,' and accordingly, is in danger in the general population environment.  *Id.* at 4.  He argues that his placement 'is, in practice, indefinite lock up' because NBCI gives him 'a fabricated infraction over and over and sanction[s him] with lock up for coming forward and seeking safety.'  *Id.*

(ECF No. 26 at 2-6.)

By order of March 23, 2023, Defendants NBCI and Christopher Wedlock were dismissed from this action.  (ECF Nos. 26, 27.)  Before directing service on the remaining Defendants, the court afforded the Amended Complaint liberal construction, and, in doing so, clarified:

> The Court construe[d] Plaintiff Bell's claims that may proceed as follows: (1) DPSCS and the named Defendants have failed to protect him, and relatedly, (2) repeated assignments to disciplinary segregation constitute deliberate indifference to an excessive risk to Plaintiff Bell's physical and mental health arising from conditions akin to solitary confinement, amounting to constitutionally inadequate conditions of confinement in violation of the Eighth Amendment; and (3) that WCI officers used excessive force against him when they assaulted him on May 3, 2022. Defendants [were] directed to clearly address each of these claims.

(ECF No. 26 at 10.)

Through the Motion, Defendants argue they are entitled to dismissal of the Amended Complaint or, alternatively, summary judgment because Plaintiff Bell: (1) failed to exhaust his administrative remedies; (2) fails to state a claim for which relief may be granted for failure to

protect; (3) Plaintiff was not subject to excessive force; (4) the conditions of Plaintiff's confinement do not violate the Eighth Amendment.

## II.    LEGAL STANDARDS

### Federal Rule 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient."  *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief."  *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-

PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

**Federal Rule 56**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its

favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt,* 999 F.2d at 778-79, and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Exhibits to the Motion & Conversion of the Motion to One for Summary Judgment**

Defendants attach exhibits in support of their Motion. When deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat the Motion as a motion for summary judgment where matters outside the pleadings are not excluded, but rather are considered by the court in its resolution of the Motion. Fed. R. Civ. P. 12(d).

Importantly, "[t]here are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the

12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Second, the parties must first "be afforded a reasonable opportunity for discovery."  *Gay*, 761 F.2d at 177.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

The present case meets both requirements.  First, Plaintiff Bell had adequate notice that the Motion may be treated as a motion for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (explaining that "[b]ased upon the caption alone, [the plaintiff] was on notice that this motion might be treated as one for summary judgment").  Second, Plaintiff Bell was afforded a reasonable opportunity for discovery in the underlying administrative proceedings, does not argue that additional discovery is necessary, and did not submit a Rule 56(d) affidavit.  *See Harrods*, 302 F.3d at 244 (explaining that "[i]f a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'") (quoting *Evans*, 80 F.3d at 961); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (explaining that the failure to file an affidavit indicating a need for discovery "is itself sufficient grounds to reject a claim that the

opportunity for discovery was inadequate.").[4]  Accordingly, the court will treat the Motion as one for summary judgment.

## III.   DISCUSSION AND ANALYSIS

As it pertains to exhaustion of Plaintiff's administrative remedies, Defendants submit the Declarations of Justin Long, the Administrative Remedy Procedure ("ARP") Coordinator at NBCI (ECF No. 39-11); Briana Hart, the ARP Coordinator for WCI (ECF No. 39-13); and Kristina Donnelly, Special Assistant to the Director of Patuxent Institution (ECF No. 39-15).  Exhibits are included with each Declaration.  (ECF Nos. 39-12, 39-14, and 39-16.)

Ms. Hart's declaration avers that Plaintiff Bell filed one ARP at WCI between January 1, 2021, and December 28, 2023.  (ECF No. 39-13, ¶¶ 4, 5.)  This ARP was given case number WCI-1150-21.  (Id., ¶ 4.)  Although the declaration states that "a true and correct" copy of that ARP is attached to the affidavit, it is not.  Id.  The attachment pertains to a different individual, not Plaintiff Bell, under case number WCI-2023-22.  ECF No. 39-14.  Therefore, the subject matter of ARP WCI-1150-21 cannot be reviewed the court.

Mr. Long's declaration avers that, "based upon [his] search of all available records," which he describes as "exhaustive," Plaintiff Bell has filed seven ARPs during his time at NBCI.  (ECF No. 39-11, ¶¶ 3, 4, 5.)  With respect to Plaintiff's NBCI ARPs, ARPs dated May 31, June 8, June 18, and July 16, 2022, and March 1, 2023, contain allegations regarding continued attempts to place Plaintiff into general population, which Plaintiff contends places him in danger.  (ECF No. 39-12.)  Each of these ARPs was summarily dismissed on "procedural" reasons" – specifically that "inmates may not seek relief through the [ARP process] regarding Disciplinary proceeding

---

[4] Because the court construes broadly all filings of self-represented parties, the court also notes that nothing in Plaintiff Bell's opposition could be construed to suggest that he required or requested that he be provided more information or opportunity to investigate his claims, or the like.  Therefore, Plaintiff provided no Rule 56(f) affidavit or its facsimile.

procedures and decisions" or, alternatively, because the ARPs had been "previously resolved" and were "repetitive." *Id.*

The ARP filed July 2, 2022, was filed against NBCI ARP Coordinator Mr. Long for "thwarting the ARP process." *Id.* at 10. Plaintiff Bell points out that his ARPs have been rejected as improperly seeking "adjustment" or challenging disciplinary decisions, which Plaintiff Bell clarifies he "is not." *Id.* Instead, he states that he "filed a ARP for the lack of safety provided by the institution and abuse due to inadequate and unsatisfactory job performance." *Id.* This ARP, too, was dismissed as previously resolved or repetitive, but a handwritten note is included advising Plaintiff Bell that "appeals can be sent to HQ." *Id.*

Finally, in support of their argument that Plaintiff Bell's claims are unexhausted, Defendants include the declaration of Kristina Donnelly, Special Assistant to the Director of Patuxent Institution. ECF No. 39-15. Ms. Donnelly states that in her position she has "access to requests for administrative remedies ("ARPs") that are appealed by prisoners throughout the Maryland Division of Correction to the Commissioner of Correction." *Id.* ¶ 1. She further attests that the "Headquarters Administrative Remedy Procedure (ARP)/Inmate Grievance Program (IGP) Unit maintains a database record of ARP appeals filed from 2009 to the present." *Id.* ¶ 2. (The declaration is dated November 14, 2023.).

As an attachment to her declaration, which Ms. Donnelly attests is true and accurate, Ms. Donnelly includes a print-out detailing appeals filed by Plaintiff Bell to the Commissioner of Correction, which identifies three filings. ECF No. 39-16. The first, case number WCI-2093-13, reflects a filing date of February 6, 2014, and a resolution date of February 11, 2014. *Id.* The second, WCI-2573-18, was filed and resolved on December 4, 2018. *Id.* Finally, the third filing appears to be the same case referenced in the affidavit of Ms. Hart, case number WCI-1150-21.

*Id.*, *see also* ECF No. 39-13.  This appeal has a filing date of August 31, 2021, and a disposition

date of September 28, 2021.  *Id.*  Based on the forgoing, Defendants argue that Plaintiff Bell "filed

suit in the District Court without first exhausting his administrative remedies" and "because he has

not complied with the requirements of the PLRA, his Complaint must be dismissed."  ECF No. 39

at 15.[5]  Plaintiff Bell's opposition to the Motion fails to respond to or acknowledge Defendants'

argument regarding exhaustion.

**Prisoner Litigation Reform Act and Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Under the PLRA, "'prisoner' means any person incarcerated or detained in any facility

who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal

law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.*

§ 1997e(h).  The term "prison conditions" encompasses "all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege excessive force

or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Chase v. Peay*, 286 F. Supp.

2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and

does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust

administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See*

---

[5] For the reasons stated *infra*, the court agrees with Defendants that Plaintiff Bell's claims are unexhausted.  Therefore, the court will neither describe nor consider other evidence advanced by Defendants in support of the Motion.  (*See* ECF Nos. 39-2 through 39-10.)

*Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

The court may dispose of a claim on this ground only if "the defendants raise the issue as an

affirmative defense and the inmate has had an opportunity to respond to the affirmative defense"

or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is

"apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d

717, 725 (4th Cir. 2008)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his

administrative remedies.  *Moore*, 517 F. 3d at 729; *see also Langford v. Couch*, 50 F. Supp. 2d

544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now

mandatory.").   Exhaustion requires completion of "the administrative review process in

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S.

81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies,

which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency

addresses the issues on the merits).' " *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024

(7th Cir. 2002)) (emphasis in original).  Although the PLRA requires a prisoner to exhaust

available remedies, "an administrative remedy is not considered to have been available if a

prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d

at 725.

DPSCS has established an "administrative remedy procedure" ("ARP") for use by

Maryland State prisoners for "inmate complaint resolution." *See generally* MD. CODE ANN., CORR.

SERVS. ("C.S."), § 10-201, *et seq*.; MD. CODE REGS. ("COMAR") 12.07.01B(1) (defining ARP).

The grievance procedure applies to the submission of a "grievance[s] against . . . official[s] or

employee[s] of the Division of Correction."  C.S. § 10-206(a).  Regulations promulgated by

DPSCS concerning the administrative remedy procedure define "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement."  COMAR 12.07.01.01(B)(7).  "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2.  C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Department of Corrections official or employee.  *Id.* § 10-206(a).  If, however, a prison has an IGO-approved grievance procedure, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO.  *Id.* § 10-206(b).  When the ARP process makes available potential remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps.  A prisoner is first required to file an initial ARP with the facility's "managing official." COMAR 12.02.28.05(D)(1). "Managing official" is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  An ARP request must be filed within 30 days following the complained-of incident, or within 30 days of the date on which the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process becomes relevant (and required) if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  Should either of those circumstances exist, the prisoner has 30 days within which to file an

12

appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).  If the Commissioner denies an appeal, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO").  COMAR 12.02.28.18; COMAR 12.07.01.05(B); C.S. § 10-206(a).

When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge ("ALJ") of the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); MD. CODE ANN., STATE GOV'T § 10-206(a)(1).

An ALJ decision denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  If the ALJ concludes, however, that the inmate's complaint is meritorious in whole or in part, the ALJ's decision constitutes a recommendation to the Secretary of DPSCS; the Secretary is then tasked with rendering a final agency determination within 15 days following receipt of the ALJ's proposed decision.  C.S. § 10-209(b)(2)(c); COMAR 12.07.01.10(B).  The final agency determination is subject to judicial review in Maryland state court so long as the claimant has exhausted his remedies.  C.S. § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's

administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (explaining that exhaustion provides prison officials with the opportunity to respond to a complaint through appropriate administrative remedies). The PLRA's exhaustion requirement obligates prisoners to pursue the administrative grievance avenue until they receive a final denial of the claims, having pursued the administrative appellate process to its end. *Chase v. Peay*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the administrative grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (holding that prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

As this court has previously clarified, the Amended Complaint asserts three causes of action against Defendants: 1) Defendants failed to protect him; 2) Defendants violated his constitutional rights through repeated assignment to disciplinary segregation constituting

deliberate indifference to an excessive risk to Plaintiff Bell's physical and mental health arising from conditions akin to solitary confinement, and amounting to constitutionally inadequate conditions of confinement in violation of the Eighth Amendment to the United States Constitution; and 3) WCI officers employed unlawful excessive force against him on May 3, 2022.  (ECF No. 26 at 10.)

The following facts are undisputed:

With respect to Plaintiff's NBCI ARPs: ARPs dated May 31, June 8, June 18, and July 16, 2022, and March 1, 2023, pertain to alleged continued attempts to place Plaintiff Bell into general population, and subsequent assignment to disciplinary segregation when he refused general population placement.  ECF No. 39-11.  As to these claims, therefore, there is no dispute of fact that Plaintiff Bell initiated the ARP process by filing an ARP at the institutional level.  Fatal to Plaintiff Bell's claims, however, it is undisputed that Plaintiff did not pursue any appellate process to the Commissioner of Correction for any of these ARPs.  Although it is undisputed that Plaintiff has pursued three appeals to the Commissioner of Correction (*see* ECF No. 39-16), none of these are appeals of ARPs originating at NBCI.  *Id.*  Plaintiff concedes this.

Likewise, there is no dispute of fact that Plaintiff failed to exhaust his administrative remedies regarding allegations of excessive force at WCI.  Specifically, although it is undisputed that Plaintiff filed an ARP while housed at WCI, Plaintiff fails to generate any question that this ARP did not relate to the use of force alleged in the Amended Complaint, because the ARP was resolved at the Commissioner level months before the alleged assault occurred.  Ms. Hart's affidavit attests that only one ARP, WCI-1150-21, was filed by Plaintiff Bell between January 1, 2021 and December 28, 2023.  (ECF No. 39-13.)  That ARP was appealed to the Commissioner of Correction on August 31, 2021, and was resolved on September 28, 2021.  (ECF No. 39-16.)

Therefore, it undisputed that the only ARP filed by Plaintiff Bell while housed at WCI, ARP WCI-1150-21, was resolved months before the alleged assault about which Plaintiff complains in the Amended Complaint.

In sum, there is no dispute of material fact that, although Plaintiff Bell filed grievances with respect to some issues he complains of in his Amended Complaint, he failed to complete the administrative process as to all issues asserted and conditions complained of in the Amended Complaint: it is undisputed that Plaintiff Bell filed three appeals to the Commissioner each of which was resolved prior to the events complained of in the Amended Complaint.  ECF 39-16. The most recent of these filings, WCI-1150-21, bears a disposition date of September 28, 2021. *Id.*  The allegations raised in the Amended Complaint related to events beginning on May 3, 2022. ECF No. 25.[6]  After the incident on May 3, 2022, Plaintiff Bell alleges he was transferred to NBCI; the remainder of his claims raised in the Amended Complaint stem from his time at NBCI.  *See* ECF Nos. 6, 25.  Thus, given that the allegations in this case arose after resolution of Plaintiff Bell's most recent appeal to the Commissioner of Correction, Plaintiff Bell cannot, and does not, raise a dispute of fact that he failed to complete the second step in the ARP process as to any of his present claims.  Therefore, Defendants are entitled to judgment as a matter of law.[7]

---

[6] The dates set forth in Plaintiff Bell's Amended Complaint and Supplement do not align.  In his Amended Complaint, Plaintiff Bell alleges the assault at WCI occurred on May 5, 2022; in his Supplement, he alleges it occurred on May 3, 2022.  (*Compare* ECF No. 6 at 2 with ECF No. 25 1-2.)  Construing the allegations in Plaintiff Bell's favor, the court utilizes the earlier date.

[7] Some of Plaintiff Bell's allegations appear to complain of on-going conditions, *e.g.*, assignment to segregation. Nothing in the court's ruling forecloses the possibility that the administrative remedy process may still be available to Plaintiff Bell as to such complained-of conditions or circumstances. If that be the case, and should Plaintiff Bell fully exhaust administrative remedies regarding any such condition, he is of course entitled to pursue a separate complaint related to such allegations and grievances in which he does not prevail. The court makes no finding or commentary as to any allegedly ongoing conditions of confinement.

**Plaintiff Bell's "Motion to Charge Robert Fritz Under the Penalties of Perjury"**

In his "Motion to Charge Robert Fritz Under the Penalties of Perjury," Plaintiff Bell challenges the veracity of the Declaration of Robert Fritz as to Plaintiff's conduct.  Based on its title, the court understands Plaintiff Bell to ask the court (or some authority) to charge Mr. Fritz with perjury.  Inasmuch as the court does not reach the substantive merits of the Second Amended Complaint, the court need not, and has not considered evidence advanced by Defendants in support of the Motion to which Mr. Fritz's Declaration pertains.  Therefore, Plaintiff Bell's motion will be denied as moot.

**II.    CONCLUSION**

For the foregoing reasons, the Motion, construed as one for summary judgment, will be granted.  Plaintiff Bell's "Motion to Charge Robert Fritz Under the Penalties of Perjury" is denied as moot.  ECF No. 50.  A separate order follows.


August 8, 2024

/S/
_____
Julie R. Rubin
United States District Judge